**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ABIGAIL NICHOLS**, on behalf of herself and all others similarly situated, | |
| Plaintiff, | |
| v. | |
| **300 M STREET DEVELOPMENT GROUP, LLC, et al.** | **Case No. 1:25-cv-00138** |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>MOTION TO PARTIALLY DISMISS THE COMPLAINT</u>**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

I.  RELEVANT ALLEGATIONS OF FACT ..................................................................... 1

    A.  The Apartment Hold Fee. ................................................................................. 2
    B.  The Common Area Electricity Fee. .................................................................. 2
    C.  The Trash Fee. .................................................................................................. 3
    D.  The Service Fee. ............................................................................................... 3

II.  ARGUMENT ................................................................................................................. 4

    A.  Legal Standard. ................................................................................................ 4
    B.  Plaintiff Fails to State A Claim With Respect to the Apartment Hold Fee. ...... 4

        i.  The Application Fee Claim Fails Because Plaintiff Does Not
            Allege She Suffered an Injury in Fact. ................................................. 5
        ii.  Plaintiff's CPPA Claims Regarding the Application Fee Fail for
            Additional Reasons. .............................................................................. 6

    C.  Plaintiff Fails to State Any Claim Under the CPPA With Respect To the
        Common Area Electricity Charges and the Trash Fee. ...................................... 9

        i.  The Plain Language of DCMR 14-600.3 and the Definition of
            "Furnish" Do Not Support Plaintiff's Legal Contention. ...................... 10
        ii.  Recent Legislation in the DC Council to Amend the Code to
            Prohibit Owners from Charging Tenants Common Area Utility
            Fees Did not Pass. ................................................................................. 11
        iii.  Because DCMR 14-600.3 Does Not Require an Owner to
            "Furnish" Without Charge, Plaintiff's CPPA Claims Premised on
            this Code Must be Dismissed. ............................................................... 12
        iv.  Plaintiff's catch-all allegation of an unfair trade practice does not
            save her claim. ...................................................................................... 14

    D.  Plaintiff Fails to State Any Claim Under the CPPA With Respect To the
        Service Fee Charged by Conservice. ................................................................. 14

        i.  Plaintiff's Assertion that the DC Code Prohibits the Service Fee
            Fails as a Matter of Law. ....................................................................... 14
        ii.  Plaintiff's CPPA Claims Regarding the Service Fee Fail as a
            Matter of Law. ...................................................................................... 16

III.  CONCLUSION ............................................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Abdelaal v. Urb. Eng'rs, Inc.*, Civ. No. 23-1793 (LLA), 2024 U.S. Dist. LEXIS 138033,
    2024 WL 3673314 (D.D.C. Aug. 5, 2024) ................................................................... 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................... 4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. 4, 7, 8

*Dane v. United Healthcare Inc. Co., et al.*, 974 F.3d 183 (2d Cir. 2000) ...................... 6

*Floyd v. Bank of Am. Corp.*, 70 A.3d 246 (D.C. Ct. App. 2013) ...................... 7, 13, 16

*Grayson v. AT&T Corp.*, 15 A.3d 219 (D.C. Ct. App. 2011) .................... 5, 13, 14, 17

*Hemp Indus. Ass'n v. Drug Enf't Admin.*, 36 F.4th 278 (D.C. Cir. 2022) ...................... 4

*Kaempe v. Myers*, 367 F.3d 958, 361 U.S. App. D.C. 335 (D.C. Cir. 2004) ................ 11

*Little v. SunTrust Bank*, 204 A.3d 1272 (D.C. 2019) ...................................................... 6

*Martin v. U.S. Marshals Serv.*, 674 F. Supp. 2d 122 (D.D.C. 2009) .............................. 4

*Slinksi v. Bank of Am.*, N.A., 981 F. Supp. 2d 19 (2013) ............................................... 4

*Tucker v. Howard Univ. Hosp.*, 764 F. Supp. 2d 1 (D.D.C. 2011) .............................. 4

*Witherspoon v. Philip Morris, Inc.*, 964 F. Supp. 455 (D.D.C. 1997) .......................... 4

**Statutes**

15 U.S.C. § 45(n) ................................................................................................. 8, 9, 14

28 U.S.C. § 1332(d)(2) ............................................................................................... 1

D.C. Code § 28-3901 ................................................................................................ 8

D.C. Code § 28-3904 ...................................................................................... 1, 7, 13

D.C. Code § 28-3904(e-1) ............................................................................. 5, 12, 16

D.C. Code § 28-3904(f) ................................................................................ 6, 7, 12, 16

D.C. Code § 28-3904(f-1) ............................................................................. 6, 7, 13, 16

D.C. Code § 28-3904(r) ................................................................................................ 6, 13, 14

D.C. Code § 28-3904(r)(1)-(5) ........................................................................................ 13, 14, 17

D.C. Code § 28-3905(k)(1)(A) .................................................................................................. 5

D.C. Code § 42.3051.03(2A) ..................................................................................................... 4

D.C. Code § 42.3505.10(b)(1) .................................................................................................... 4

D.C. Code § 42-3505.10(b-2)(1) ................................................................................... 14, 15, 16

FTC Act § 5 .............................................................................................................................. 8

**Other Authorities**

D.C. Council Bill 250991 ................................................................................................. 11, 12

D.C. Council Committee Report re: Bill B25-0074  (June 22, 2023) .......................................... 15

https://legiscan.com/DC/bill/B25-0991/2023 ............................................................................ 12

https://ota.dc.gov/sites/default/files/dc/sites/ota/publication/attachments/2015%2007%20
03%20OTA%20DC%20Tenant%20Bill%20of%20Rights%20ODAI-
OTA%20FINAL.pdf (last accessed 1/22/2025). ......................................................... 16

https://www.merriam-webster.com/dictionary/maintain ............................................................ 16

Merriam-Webster Dictionary ................................................................................................ 10, 16

**Rules**

DCMR 14-600.1 ....................................................................................................................... 15

DCMR 14-600.3 .......................................................................................................... 9, 10, 11, 12

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 1, 4

Fed. R. Civ. P. 9(b) .................................................................................................................... 4

In this putative class action removed from the Superior Court for the District of Columbia,[1] Abigail Nichols, who is a tenant of an apartment building owned by Defendant, 300 M Street Development Group, LLC ("300-M"), alleges that 300-M and Co-Defendant, LCOR Asset Management Limited Partnership ("LCOR") (collectively, "Defendants"), charge fees that are illegal under the D.C. Code and, therefore, constitute unlawful trade practices under the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3904 (the "CPPA"). Although Defendants dispute that any fees or charges Plaintiff paid are illegal, their present Motion focuses on Plaintiff's failure to plead a claim with respect to four of the five fees or charges at issue: (1) a $250.00 deposit that Plaintiff was required to pay to hold her selected apartment when she applied for a lease; (2) a $10 per month trash fee that is required by Plaintiff's lease; (3) a common area electricity fee; and (4) a $4.50 service fee charged by the third-party service provider that prepares and sends monthly invoices for fees and electricity that Plaintiff pays. For the reasons explained below, Plaintiff's Complaint fails to state any claim that these four fees or charges violate D.C. law, or constitute a deceptive or unfair trade practice under the CPPA.[2] Although the Complaint groups all of the alleged illegal, deceptive, and unfair fees and charges into a single Count, the Court should dismiss the allegations concerning the above-described fees and charges from Count I pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    RELEVANT ALLEGATIONS OF FACT

Ms. Nichols lives at the Cielo Modern Apartments, an upscale apartment building located between the Union Market and NoMa neighborhoods in Washington, D.C., at 300 M Street. *See*

---

[1] For the reasons explained in Defendants' Notice of Removal, ECF No. 001, this Court has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332(d)(2), as modified by the Class Action Fairness Act of 2005.
[2] Plaintiff also alleges that Defendants engaged in an unlawful "drip pricing scheme." Although Defendants dispute these allegations and deny having engaged in any such scheme, they do not seek to dismiss this particular aspect of Count I (the sole Count) of the Complaint.

Compl., ¶¶ 6-8. She signed a lease for Apartment No. 214 at Cielo on December 5, 2023, and moved in the following month. *See id.* at ¶¶ 7-8. Although 300-M owns Cielo, Plaintiff also sued LCOR on the theory that it collects and receives the payments for rent, utilities, and other fees that are the subject of her Complaint. *See id.* at ¶ 14. Her Complaint alleges the following with respect to the four fees or charges that are the subject of this Motion to Dismiss.

### A.    The Apartment Hold Fee.

Plaintiff contends that she was required to pay both a $50 application fee and "an additional $250 at the time she filed her application . . . [which] Defendants represented . . . was required to 'hold' her apartment." *Id.* at ¶¶17-18. Three days after she applied and, presumably, paid the $250 apartment hold fee, her application was accepted. *See id.* at ¶¶ 17-19. Ms. Nichols does not allege that Defendants failed to "hold" her apartment during the 3-day application vetting period, or that she did not move into the apartment that she sought to "hold" when she applied for the lease, or that the $250 hold fee was not applied to her rent. *See generally, id.* In other words, there is no allegation that Plaintiff did not receive exactly what was promised when she paid the apartment hold fee, or that the Defendants' alleged representation that the fee was to "hold" her apartment was in any way untrue.

### B.    The Common Area Electricity Fee.

Plaintiff alleges that she (and other Cielo tenants who are members of the putative class) are charged monthly for common area electricity, which the Complaint alleges to be "electric utilities used by common areas." *See id.* at ¶ 26. The electricity fee is billed through Conservice, a third-party billing service, and according to the Complaint, the Conservice bill states that the amount charged "is allocated to residents using a formula based on the number of occupants and the unit's square footage." *Id.* at ¶ 27-28. She contends that she has been charged "substantial

Common Area Electricity Fees during her tenancy at Cielo." *Id.* at ¶ 31 (alleging that she paid $597.43 from April through September 2024). She also alleges that the common area electricity utilities "are the responsibility of, or under the control of Defendants, as Plaintiff and the Class members have no ability to control the electricity used in the common areas of Cielo . . . [.]" *Id.* at ¶ 33. Plaintiff does not allege that Defendants failed to deliver or provide the common area electricity for which she and the putative class members paid, or that the method for allocating the fees to all residents is deceptive, unfair, or unlawful.

### C. The Trash Fee.

Plaintiff acknowledges that a "$10 Trash Fee is set out in her lease, which provides that trash will be paid by '[Plaintiff] when trash bills are billed by the service provider to us and then allocated to you based on . . . [a] flat rate of $10 per month." *Id.* at ¶29. As with the common area electricity charges, Plaintiff alleges that the Trash Fee is billed through Conservice, and that "the trash service [is] the responsibility of, or under the control of Defendants, as Plaintiff and the Class members have no ability to control their trash/refuse service." *Id.* at ¶¶ 26, 33. Plaintiff does not allege that Defendants failed to deliver or provide trash service to her, or that the trash service provided was inadequate or otherwise insufficient. *See generally, id.*

### D. The Service Fee.

Plaintiff's Complaint also alleges that Conservice charged her two fees: a one-time, $10.00 "new account fee" and a monthly service fee of $4.50. *Id.* at ¶ 38. These charges are included among the required charges in her lease. *Id.* at ¶ 59.

## II.    ARGUMENT

### A.    Legal Standard.

Dismissal pursuant to Federal Rule 12(b)(6) is warranted when a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Tucker v. Howard Univ. Hosp.*, 764 F. Supp. 2d 1, 5 (D.D.C. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A complaint that does not nudge a plaintiff's claims "across the line from conceivable to plausible . . . must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This Court need not accept as true "inferences unsupported by facts or legal conclusions cast in the form of factual allegations." *Hemp Indus. Ass'n v. Drug Enf't Admin.*, 36 F.4th 278, 288 (D.C. Cir. 2022). "[M]ore than labels and conclusions" are required. *Martin v. U.S. Marshals Serv.*, 674 F. Supp. 2d 122, 126 (D.D.C. 2009). As to any misrepresentations alleged, the U.S. District Court for D.C. has previously required those must be plead with particularity required by Federal Rule of Civil Procedure 9(b) since they are "akin to allegations of fraud". *See Slinksi v. Bank of Am.*, N.A., 981 F. Supp. 2d 19, 35 (2013) (quoting *Witherspoon v. Philip Morris, Inc.*, 964 F. Supp. 455, 464 (D.D.C. 1997)).

### B.    Plaintiff Fails to State A Claim With Respect to the Apartment Hold Fee.

Plaintiff's claim that the $250 fee she paid to hold her apartment pending approval of her application, which she characterizes as an "Application Fee," fails to state a claim under any of the four subsections of D.C. Code that her Complaint cites as the bases for her claim.

Plaintiff's legal theory is as follows. She contends that D.C. Code § 42.3505.10(b)(1) and (3) prohibit housing providers, such as Defendants, from charging prospective tenants any fees other than a $50 application fee prior to signing a lease with a tenant. Compl., ¶ 20. She points out that D.C. Code § 42.3051.03(2A) states that an "application fee" means "'the total of all costs or

fees that a prospective tenant is required to pay to a housing provider at the time of application or at any time prior to signing a lease . . . but not including holding deposits.'" *Id.* at ¶ 21 (quoting the code). She next asserts that the $250 fee that Defendants charged to hold her apartment was not a "holding deposit" under the D.C. Code, because the Code defines "Holding Deposit" to "'mean[] the amount a housing provider requires a prospective tenant to pay after a housing provider approves a tenant's application . . . [.]'" *Id.* at ¶ 22. Thus, she alleges, the $250 holding deposit was illegal under the D.C. Code.

Relying on the private right of action authorized by D.C. Code § 28-3905(k)(1)(A), Plaintiff claims that Defendants' hold fee constitutes "a deceptive and/or unfair trade practice prohibited by [the CPPA] Section 3904"—and more specifically, that the fee violates four subsections of the CPPA. *Id.* at ¶ 82.a. As explained below, however, she fails to state a claim pursuant to any of these subsections.

> ### i. The Application Fee Claim Fails Because Plaintiff Does Not Allege She Suffered an Injury in Fact.

Paragraph 82.a. of the Complaint first contends that the hold fee is "a transaction 'prohibited by law' in violation of Section 3904(e-1)." Even if that were true, however, Plaintiff's Complaint would still fail because she fails to allege that she suffered any injury-in-fact or loss by virtue of having been charged or paid for the fee. As explained above, Plaintiff does not allege that she got exactly what she paid for or that the Defendants misrepresented the purpose of the $250 fee. It is well established that "a person who brings a CPPA enforcement action must have suffered or must be in imminent danger of suffering an injury-in-fact." *Grayson v. AT&T Corp.*, 15 A.3d 219, 250 (D.C. Ct. App. 2011). "Thus," the D.C. Court of Appeals explained in Grayson, "when read together, subsection (k)(1) identifies who may bring a CPPA enforcement action, and subsection (k)(2) focuses on the nature of the remedies in the CPPA chapter and other rights and

remedies outside the chapter which might be available to *a person who is injured or in imminent danger of being injured* by an unlawful trade practice." *Id.* (emphasis added); *see also Dane v. United Healthcare Inc. Co., et al.*, 974 F.3d 183, 192 (2d Cir. 2000) (affirming dismissal of a claim pursuant to the CPPA because the Plaintiff's complaint failed to "plausibly allege 'an injury that is concrete and particularized, . . . fairly traceable to the challenged conduct of the defendant[,] and likely to be redressed by a favorable judicial decision.'") (quoting *Little v. SunTrust Bank*, 204 A.3d 1272, 1273-74 (D.C. 2019)).

Because Ms. Nichols fails to allege that she suffered any injury, or that she is under threat of any imminent injury, as a result of Defendants' requirement that she paid $250 to hold her apartment, the determination of whether or not the apartment hold fee violated the D.C. housing code or not is irrelevant and Count I of her Complaint must be dismissed as to the $250 hold fee.

> **ii.    Plaintiff's CPPA Claims Regarding the Application Fee Fail for Additional Reasons.**

Although the absence of any injury requires dismissal of Plaintiff's hold fee claim in its entirety, for purposes of completeness, Defendants also explain why the Complaint also fails to state any claim under the additional sections of the CPPA identified in Paragraph 82.a. of the Complaint. Plaintiff alleges that the hold fee is "an unconscionable lease term prohibited by Section 3904(r). *See id.* The Complaint, however, does not allege that the $250 hold fee is a term or otherwise included in her lease. *See generally,* Complaint. In fact, she alleges that she paid the fee *prior to* signing her lease. *See id.* at ¶ 18.

Plaintiff also contends that the hold fee violates Section 3904(f) of the CPPA because Defendants failed to disclose to Plaintiff "a material fact (i.e., the illegality of the fee)" and violates Section 3904(f-1) because Defendants "use[d] an ambiguity as to a material fact (i.e., the illegality of the fee) that tends to mislead . . . [.]" The legality or illegality of the fee, however, is not a

statement of fact but an opinion or assessment of law. *See Floyd v. Bank of Am. Corp.*, 70 A.3d 246, 255 (D.C. Ct. App. 2013) (observing that "§ 28-3904(f) makes it an unfair trade practice to fail to state a material 'fact'" and that the alleged failure by the defendant bank to inform plaintiff "about the in applicability of U.S. legal protections to overseas transmittals of Bank-customer account information" is not a material "fact" but rather, "a *legal assessment . . . not a fact*."). For the same reason, Defendants' alleged failure to disclose their assessment (which the Complaint does not allege Defendants had even made as of the date they charged the fee) about the legality of the hold fee is not actionable under Section 28-3904(f) or (f-1).

Finally, Plaintiff's general allegation in Paragraph 23 of the Complaint that the Application Fee is an "unfair trade practice" cannot save her claim. Plaintiff must furnish "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Paragraph 23 does not provide more than assertions of alleged harm to "prospective tenants" generally rather than actual harm or injury to herself:

> Defendants took advantage of potential tenants who cannot reasonably be expected to know that such a fee is excessive and illegal. Requiring prospective tenants to pay hundreds of dollars just to apply for rental housing causes substantial injury by taking funds that they are not permitted to receive. This practice also prevents tenants from filing multiple rental applications and comparison shopping between housing providers.

Compl., ¶ 23. There is nothing in this Paragraph that pertains to the Plaintiff, personally. She alleges harm only to the general public. Yet, Plaintiff's Application Fee (and every other) claim under the CPPA are premised upon the private right of action granted by Section 28-3905(k)(1)(A) of the DC Code, which provides that "A consumer may bring an action seeking relief from the use of a trade practice in violation of the law of the District." *See* Compl., ¶ 82.a. (stating that Plaintiff proceeds pursuant to § 28-3905(k)(1)(A)). The private right of action granted by this subsection, however, does not grant a plaintiff a right to allege a violation of the CPPA on behalf of the general

public. The Court need only look to the next subsection—28-3905(k)(1)(B)—as conclusive evidence of this legislative intent. Subsection 3905(k)(1)(B), which Plaintiff does not assert, provides that, "An individual may, on behalf of that individual, *or on behalf of the general public*, bring an action seeking relief from the use of a trade practice in violation of law . . . [.]" By including the right to proceed "on behalf of both the individual and the general public" in subsection 3905(k)(i)(B), the Court is constrained to find that the *exclusion* of any "general public" language from subsection 3905(k)(i)(A) clearly evidences the legislative intent *not* to permit a plaintiff, including Ms. Nichols, from proceeding on any CPPA claim on behalf of the "general public." Yet, that is precisely what her allegations in Paragraph 23 that focus exclusively on alleged harm to "prospective tenants" purports to do.

Paragraph 23's assertion that the Application fee is an "unfair trade practice" under the CPPA suffers from a second, equally-fatal flaw. Section 28-3901 of the D.C. Code provides that, "[i]n construing the term 'unfair or deceptive trade practice,' due consideration and weight shall be given to the interpretation by the Federal Trade Commission and the federal courts of the term 'unfair or deceptive act or practice,' as employed by Section 5(a) of [the FTC Act]." Under section 5 of the FTC Act, an act or practice cannot be declared unfair "unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves *and not outweighed by countervailing benefits to consumers or to competition*." 15 U.S.C. § 45(n) (emphasis added). To that end, Paragraph of the Complaint alleges "Such practice [of charging a hold deposit] also lacks any discernable countervailing benefits to consumers or competition." Compl., ¶ 23. This, however, is a bald an unsupported allegation that is insufficient under the pleading standard required by *Twombly* and its progeny.[3] Thus, Plaintiff's Complaint

---

[3] Section 5 of the FTC Act also limits the FTC's ability to rely on general public policy argument like the type that underpins Paragraph 23 of the Complaint. The Act provides that, [i]n determining whether an act

also fails to state a CPPA "catch all" claim that the alleged application or hold fee is an "unfair trade practice."

For all the above reasons, the Court should dismiss Count I in its entirety as to the application or hold fee charged to the Plaintiff.

### C.    Plaintiff Fails to State Any Claim Under the CPPA With Respect To the Common Area Electricity Charges and the Trash Fee.

Plaintiff's legal theory underpinning her CPPA claim pertaining to the Common Area Electricity Charges and the Trash Fee that she pays as a tenant of the Cielo rests entirely upon a subsection in Title 14, Chapter 6 of the D.C. Housing Code, DCMR 14-600.3. *See* Compl., ¶¶ 34-35. Specifically, she contends that this section of the housing code requires all residential building owners to heat and cool common areas, and to provide all trash services, to all tenants, free of charge. *See id.* at ¶ 34 (contending that any electric charges for common areas or trash fees are illegal). The language of upon which her conclusion rests provides,

> Where a utility (such as water, electricity, gas or other fuels, or sewer or refuse service) is the responsibility of, or under the control of, the owner or licensee of any residential building, the utility shall be furnished and maintained by the owner or licensee in the quantities needed for normal occupancy.

DCMR 14-600.3. The requirement to "furnish" in the above-quoted provision, the Complaint contends, means that it is illegal for an owner to charge for common electricity or trash services. *See id.* at ¶ 35 (alleging that, "[b]y requiring housing providers to 'furnish[]' utilities under their control, DCMR 14-600.3 requires housing providers to pay for such utilities.").

---

or practice is unfair, the Commission may consider established public policies as evidence to be considered with all other evidence. ***Such public policy considerations may not serve as a primary basis for such determination.***" 15 U.S.C. § 45(n) (emphasis added). The public policy arguments in Paragraph 23, however, are the *only* basis for Plaintiff's unfair competition claim.

The Court should decline Plaintiff's invitation to legislate in place of the Board of Commissioners for the District of Columbia by expanding the scope of this code. Indeed, legislating is exactly what the Complaint asks the Court to do. In October of 2024, only a month before Plaintiff filed her Complaint, six DC Councilmembers introduced a bill to the DC Council that sought to amend the DC code to prohibit landlords from charging common area utility fees to tenants. That bill *did not pass*. This Court should not put itself in a position of enacting legislation on behalf of Plaintiff.

> i.   **The Plain Language of DCMR 14-600.3 and the Definition of "Furnish" Do Not Support Plaintiff's Legal Contention.**

Nowhere in DCMR 14-600.3 is there any statement or suggestion that the Board of Commissioners intended the word "furnishing" to mean "furnish without charge." It is common knowledge that the word, "furnish" means to provide, supply, or one or more other terms that together mean to make an item (or in this case, a utility) available to another. *See, e.g.,* Merriam-Webster Dictionary from January 23, 2025 (defining "furnish" to mean "to equip" as in "to provide (someone) with what is needed for a task or activity," and providing various synonyms for the word). Of course, making something available to someone does not *ipso facto* mean that the recipient must receive it without charge.

It goes without saying that had the D.C. Council intended to require in 14-600.3 that all owners in the District bear all costs associated with providing tenants the comforts of common area electricity offering reliable, adequate trash services, it would have included such language clearly in the language of the code; e.g., "the utility shall be furnished and maintained [*without charge to the tenant*] by the owner."

There is no legislative history for DCMR 14-600.3 suggesting that the D.C. Board of Commissioners intended the word "furnish" to mean "furnish without charge." In fact, there is no

legislative history available at all for this section of the code, which according to the annotated version of DCMR 14-600.3, was adopted in 1955 and has not been amended since. *See* Annotated DCMR 14-600.3, attached at **Exhibit A**. Moreover, there is not a single court opinion in the District that interprets DCMR 14-600.3 to require all residential building owners to furnish all common area electricity and all trash services to tenants without charge.

> ii.    **Recent Legislation in the DC Council to Amend the Code to Prohibit Owners from Charging Tenants Common Area Utility Fees Did not Pass.**

What *is* helpful when determining what D.C.'s legislative body believes DCMR 14-600.3 *does* require, is a bill introduced to the D.C. Council one month before the Plaintiff, Ms. Nichols, filed her Complaint in the D.C. Superior Court. The bill, titled the "Fair Housing Practices Amendment Act of 2024" and sponsored by the Ward 6 Councilmember Charles Allen (Ward 6 is where the Cielo Modern Apartments is located), proposed to amend the D.C. code to prohibit "separately billing a housing accommodations utility charges to tenants" by providing that, "[a] housing provider shall not separately charge tenants, other than through monthly base rent, for the utility charges accrued by the housing accommodation for its common areas." *See* D.C. Council Bill 250991, introduced October 2, 2024, a copy of which is attached at **Exhibit B**, available at https://legiscan.com/DC/text/B25-0991/2023 (also including the cover letter from Councilmember Charles Allen to the Secretary of the D.C. Council that introduces the bill and explains its purpose).[4]

According to Councilman Allen's letter to the Secretary of the Council, the legislation was proposed because, "[i]n recent weeks, constituents have raised concerns with several multi-unit

---

[4] At the motion to dismiss stage, courts may take judicial notice of public records. *Abdelaal v. Urb. Eng'rs, Inc.*, Civ. No. 23-1793 (LLA), 2024 U.S. Dist. LEXIS 138033, 2024 WL 3673314 (D.D.C. Aug. 5, 2024)( citing *Kaempe v. Myers*, 367 F.3d 958, 965, 361 U.S. App. D.C. 335 (D.C. Cir. 2004)).

residential buildings across the District beginning to charge tenants for the electricity, water, or gas usage of common spaces in the building . . . [.]" *Id.* Of course, this is exactly what Plaintiff's Complaint complains she is being charged, and that she contends violates D.C. law.

The "Fair Housing Practices Amendment Act of 2024," however, did not even make it out of committee. *See* https://legiscan.com/DC/bill/B25-0991/2023 (summarizing the history and sponsors of the bill). The fact that the D.C. council considered but did not pass an amendment to the code to prohibit the very charge that Plaintiff contends is already illegal, is strong evidence that the practice is not already illegal under D.C. law. It also is strong support for Defendants' argument that Plaintiff's Complaint essentially asks the Court to usurp the D.C. Council by effectively enacting legislation (by interpreting the word "furnish" to mean "without charge") that the Council, itself, declined to enact.

Accordingly, the Court should find that DCMR 14-600.3's requirement to "furnish" does not mean to provide, supply, or make available "without charge" when it comes to the common area electricity and the $10 per month trash fee that Plaintiff pays.

### iii.    Because DCMR 14-600.3 Does Not Require an Owner to "Furnish" Without Charge, Plaintiff's CPPA Claims Premised on this Code Must be Dismissed.

Plaintiff contends that charging a fee for electricity or for trash service is an unfair or deceptive trade practice under four subsections of the CPPA. *See* Compl., ¶¶ 82.b and 82.c. Of course, Plaintiff's contention that charging common area electricity charges and trash fee violates Section 3904(e-1) of the CPPA as a transaction "prohibited by law" must fail because the only law upon which Plaintiff's claim is premised—DCMR 14-600.3—does not prohibit the charging of common area electricity fees.

Plaintiff's contention that these fees also violate the CCPA by "fail[ing] to state a material fact (i.e., the illegality of the fee) pursuant to Section 3904(f) and by "use of ambiguity as to a

material fact (i.e., the illegality of the fee) that tends to mislead prohibited by Section 3904(f-1) ,"

must also fail as a matter of law. As explained above with respect to the application fee, the alleged

failure to disclose the "illegality of the fee" is not a failure or ambiguity of *fact*, but an assessment

or opinion of *law* that is not actionable under either of these CPPA provisions. *See Floyd*, 70 A.3d

at 255.

Plaintiff's assertion that the requirement in her lease to pay common area electricity fees is

"an unconscionable lease term prohibited by Section 3904(r)" is unsupported by allegations of fact

that, if true, would support this claim. "A viable claim under § 28-3904(r) requires allegations

showing that a trade practice is 'unconscionable' as measured by several statutory factors set forth

in § 28-3904(r)(1)-(5)." *Grayson*, 15 A.3d at 252 (dismissing CPPA claim under Section 3904(r)

because the complaint at issue failed to make more than conclusory allegations concerning the five

factors in this CPPA subsection) (citation omitted).

Plaintiff Nichols' Complaint does not even mention, much less discuss or attempt to plead

any allegation of fact that would plausibly establish any of the five factors that a viable claim under

Section 3904(r) must establish, which are:

> **(1)** knowledge by the person at the time credit sales are
> consummated that there was no reasonable probability of payment
> in full of the obligation by the consumer;
>
> **(2)** knowledge by the person at the time of the sale or lease of the
> inability of the consumer to receive substantial benefits from the
> property or services sold or leased;
>
> **(3)** gross disparity between the price of the property or services sold
> or leased and the value of the property or services measured by the
> price at which similar property or services are readily obtainable in
> transactions by like buyers or lessees;
>
> **(4)** that the person contracted for or received separate charges for
> insurance with respect to credit sales with the effect of making the
> sales, considered as a whole, unconscionable; and

>    **(5)** that the person has knowingly taken advantage of the inability of
>    the consumer reasonably to protect his interests by reasons of age,
>    physical or mental infirmities, ignorance, illiteracy, or inability to
>    understand the language of the agreement, or similar factors;

D.C. Code § 28-3904 (r)(1)-(5).

Thus, because Plaintiff's Complaint makes no reference to any of the statutory factors set forth above, and does not provide any other allegations of fact about why an otherwise legal practice is nevertheless unconscionable when it is documented in a lease, Plaintiff's Section 28-3904(r) claim also fails as a matter of law. *See Grayson*, 15 A.3d 219.

> ### iv.    Plaintiff's catch-all allegation of an unfair trade practice does not save her claim.

Finally, Plaintiff's general allegation in Paragraph 36 of the Complaint that the electricity and trash fee is an "unfair trade practice" cannot save her claim for the same reasons explained above with respect to Paragraph 23 of the Complaint. Like paragraph 23, Paragraph 36 does not allege that any of the harm caused by the Defendants is personal to her as opposed "the public" in general, which Section 28-3905(k)(1)(A) does not permit.[5] And, Plaintiff provides no more than a bald, unsupported conclusion when she alleges, without factual support, that "Defendants' practice lacks any discernible countervailing benefits to consumers or competition." Compl., ¶ 36.

> ## D.    Plaintiff Fails to State Any Claim Under the CPPA With Respect To the Service Fee Charged by Conserve.

> ### i.    Plaintiff's Assertion that the DC Code Prohibits the Service Fee Fails as a Matter of Law.

As to the service fee, Plaintiff alleges that it is illegal under D.C. Code § 42-3505.10(b-2)(1), which provides that,

>    A housing provider shall not charge a fee to a prospective tenant
>    before move-in, during a tenancy, or after move-out for services

---

[5] Notably, the FTC Act precludes "public policy considerations" from serving "as a primary basis" for a determination that a trade practice is unfair. *See* 15 U.S.C. § 45(n).

> required of the housing provider to maintain a unit in a condition consistent with the implied warranty of habitability and with Titles 12 and 14 of the District of Columbia Municipal Regulations, or substantially similar subsequent regulations; except, that nothing in this subsection prohibits a housing provider from withholding a tenant's security deposit to replace damaged items if the tenant has caused damage to the unit beyond the standard of ordinary wear and tear as defined in § 42-3502.17(c)(3).

Compl., ¶ 40. Plaintiff cites to the legislative history for this section of the code, which states that "[h]ousing providers have a duty to maintain units in a condition rendered habitable under the warranty of habitability under the designated housing code regulations. The purpose of this section was to make sure housing providers are not passing the costs for which they are responsible onto tenants." *Id.* at ¶ 41.[6] The warranty of habitability, the Complaint asserts, requires housing providers to provide tenants with utilities such as water and electric. *See id.* at ¶ 42 (citing DCMR 14-600.1). Therefore, the Complaint concludes, the Service Fee that Conservice adds to its invoice—which includes charges for rent, common area electricity, a technology fee, HVAC, sewer, water, and gas (*see id.* at ¶ 26 (image of Conservice invoice)), violates § 42-3505.10(b-2)(1). *See id.* at ¶ 44. Not so, under a plain reading of this code.

The fee prohibited by § 42-3505.10(b-2)(1) is one charged by a "provider to maintain a unit in a condition consistent with the implied warranty of habitability"—with *maintain* being the operative word. There is no allegation in the Complaint that the Conservice fee of $4.50 per month is a fee to "maintain" anything. In fact, the Complaint acknowledges that the only activity Conservice provides is to "prepare monthly statements and provide conservation resources." *Id.* at ¶ 39. These are not maintenance activities. Moreover, the warranty of habitability that is implicit

---

[6] The D.C. Council Committee Report cited in Plaintiff's Complaint supports this meaning noting that housing providers may still charge security deposits "to cover items that go beyond the standard of ordinary wear and tear on a unit." D.C. Council Committee Report re: Bill B25-0074 at 4 (June 22, 2023).

in all D.C. leases requires a landlord to "maintain your apartment and all common areas in the building in compliance with the housing code including . . . ensuring adequate heat, light, and ventilation." *See* Tenant Bill of Rights, a copy of which is attached at **Exhibit C.**[7] The plain and common meaning of the word "maintain" is "to keep in an existing state (as of repair, efficiency, or validity), preserve from failure or decline." *See* Merriam-Webster Definition, attached at **Exhibit D**.[8]

Thus, although Section 42-3505.10(b-2)(1) may prohibit a housing provider from charging to maintain the water lines that supply an apartment with water, it does not prohibit a provider, like Defendants—or Defendants' third-party billing company—from charging a small fee for providing the very convenience service preparing a consolidated, convenient monthly invoice for tenants to review all of their monthly charges.

> ii.    **Plaintiff's CPPA Claims Regarding the Service Fee Fail as a Matter of Law.**

Because the Service Fee is not unlawful, Plaintiff's Complaint does not state a claim in paragraph 82(d)(i) that Defendants are "engaging in a trade practice in violation of a law" in violation of Section 3904(e-1) of the CPPA. Plaintiff's contention that the Service Fee violations Sections 3904(f) and (f-1) of the CPPA because it is illegal and Defendants failed to disclose "the illegality of the fee" fails for the same reasons explained above. First, the fee is not illegal. Second, Section 3904(f) and (f-1) only prohibit misrepresentations or ambiguities of *fact*, not assessments or opinions of law. *See Floyd*, 70 A.3d at 255. Plaintiff's Complaint fails to state a claim that the Service Fee is an unconscionable lease term fails for the same reasons as explained above with

---

[7]https://ota.dc.gov/sites/default/files/dc/sites/ota/publication/attachments/2015%2007%2003%20OTA%20DC%20Tenant%20Bill%20of%20Rights%20ODAI-OTA%20FINAL.pdf (last accessed 1/22/2025).

[8] https://www.merriam-webster.com/dictionary/maintain (last accessed 1/23/25).

respect to the common area electricity fees and trash fee—i.e., a Complete failure to allege or show any fact that, if true, would establish any of the statutory factors set for in Section 28-3904 (r)(1)-(5) of the CCPA. *Grayson*, 15 A.3d at 252. Finally, Plaintiff's "catch-all" allegation that charging a Service Fee is an "unfair trade practice" is, yet again, unsupported by plausible allegations of fact that are personal to *her* as opposed to the general public or unspecified "prospective tenants," generally. *See* Compl., ¶ 45 (also alleging, without any factual support, that "Defendants' practice lacks any discernible countervailing benefits to consumers or competition.").

## III.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's claims with respect to the Apartment Holding Deposit that she was charged, the Common Area Electricity Charges, the Trash Fee, and the Service Fee, because the Complaint fails to state any claim upon which relief could be granted under the CPPA with respect to any of these charges or fees.

Dated: January 24, 2024                          Respectfully submitted,

**SHULMAN ROGERS, P.A.**

*/s/ Lauren M. Upton*
Lauren M. Upton (Bar No. 90008024)
The Banner Building at McHenry Row
1215 East Fort Avenue, Suite 301
Baltimore, Maryland 21230
lupton@shulmanrogers.com
Telephone: (410) 520-1334
Facsimile: (301) 230-2891

*Counsel for Defendants*